**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TOMMY D. HODGES,**

     **Plaintiff,**

**vs.**                               **Case No. 4:12cv493-CAS**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

     **Defendant.**

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a Social Security case referred to the undersigned upon consent of the parties, doc. 10, and reference by Chief United States District Judge M. Casey Rodgers. Doc. 11.   The Court concludes that the decision of the Commissioner should be affirmed.

**I.  Procedural History**

On June 21, 2007, Plaintiff, Tommy D. Hodges, applied for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II Social Security Act (Act) and on June 26, 2007, also applied for Supplemental Security Income (SSI) benefits pursuant to under Title XVI of the Act for a period of disability with an alleged onset date of May 19, 2001.   R. 11, 118-20.   (Citations to the Record shall be by the symbol "R". followed by a page number that appears in the lower right corner.)

Plaintiff's claims were denied initially on October 2, 2007, and upon reconsideration on June 11, 2008.   R. 11, 71-80.   On June 19, 2008, Plaintiff requested

a hearing.   R. 11.   On January 13, 2010, in Tallahassee, Florida, an evidentiary hearing

was conducted by Administrative Law Judge (ALJ) Brendan Flanagan.   R. 11, 26-62.

Plaintiff was represented by James A. Kole, an attorney.   R. 11, 88-91.   Plaintiff

testified.   R. 11, 33-58.   Ron C. Mayne testified as an impartial vocational expert.   R.

11, 58-61, 115-16 (Resume).

On January 22, 2010, the ALJ entered a decision concluding that Plaintiff is not

disabled.   R. 21.   On or about February 3, 2010, Plaintiff filed a request for review of the

ALJ's decision that was denied on July 18, 2012.   R. 1-7.   Plaintiff provided the Appeals

Council with additional evidence from Plaintiff's treating physician, Jeffrey Wasserman,

D.O.   The information consisted of a Physical Capacity Evaluation Checklist form and a

Secondary Requirement Checklist form dated February 1, 2010.   R. 471-76.[1]   The

ALJ's decision stands as the final decision of the Commissioner.

On September 18, 2012, Plaintiff, appearing pro se, filed a Complaint in this Court

requesting judicial review of the Commissioner's final decision.   Doc. 1.   On October 22,

2012, Plaintiff filed an Amended Complaint, doc. 5, followed by a Second Amended

Complaint on November 28, 2012.   Doc. 7.   On February 12, 2013, the Commissioner

filed an Answer.   Doc. 12.   On April 30, 2013, Plaintiff filed a memorandum, doc. 18,

followed by a second memorandum filed on May 29, 2013.   Doc. 20.   On June 13, 2013,

the Commissioner filed a memorandum.   Doc.   21.   The memoranda have been

considered.

---

[1]   The Appeals Council noted that Plaintiff was found to be under a disability
beginning January 23, 2010, one day after ALJ Flanagan's decision in this case, based
on the application(s) filed on August 25, 2010.   R. 2.   The Appeals Council determined
that the additional evidence did not warrant a change in the ALJ's decision.   *Id.*

## II.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

---

[2]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## III.  Legal Analysis

### A.  The ALJ's decision and the record evidence

1.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 19, 2001, the alleged onset date.   R. 13.   The ALJ noted that Plaintiff worked after the alleged disability date; however, this work was an unsuccessful work attempt.   The ALJ noted that Plaintiff earned $4,829 (in 2004).   *Id.*   He worked for

Penny A. Anstey, Mobiltech Automotive Center.  R. 126.  The ALJ also noted that

Plaintiff testified that he was performing work as an auto-mechanic.  R. 13.

2.

At step two, the ALJ found that Plaintiff has two severe impairments: degenerative

disc disease and angina, which caused more than a minimal limitation on Plaintiff's ability

to perform basic work activity.  R. 13.  The ALJ considered Plaintiff's stated difficulties

with his right arm, discussing patient records from Robert Thornberry, M.D., R. 346-80

(Exhibit 15F); a consultative examination report performed by Carla Holloman, D.O., R.

238-42 (Exhibit 4F); and a consultative examination report performed by Wayne

Sampson, M.D., R. 307-16 (Exhibit 10F).[3]  R. 14.  (These consultative examinations

---

[3]  On May 21, 2001, Plaintiff sustained "a severe explosive-type injury to his [right] forearm with the explosion of a tire he was changing."  R. 379.  (In his memorandum, Plaintiff claims that he injured his right arm in May 2001 when he "was thrown into a soda machine."  Doc. 20 at 2; *but see* R. 52 (Plaintiff testified that a "[t]ire blew up with [him]" requiring surgery of his right forearm.)  After physical therapy and by June 26, 2001, Dr. Thornberry noted that Plaintiff's "hand function is getting much much better.  He's working on his own. . . .He's got an elbow that's got full ROM.  He's got almost full pronation and supination, which is very very good. His skin grafts have healed up very well and overall considering the severity of his accident, he's making dramatic progress." R. 371.  Dr. Thornberry felt he needed to "make sure to caution him, in his use at work and see him back in six weeks and see if this hasn't united by that point in time."  *Id.*  By July 10, 2001, Dr. Thornberry noted the need to remove the ulnar and radial plates and "put in substantial bone grafts and place new plates."  R. 369.  Dr. Thornberry also noted that Plaintiff "was strongly encouraged to cease cigarette smoking, to cease drinking alcoholic beverages of any kind, to eat well and to not use this arm for changing tires."  *Id.*  On July 18, 2001, the hardware was surgically removed and other procedures performed.  R. 366.  Dr. Thornberry noted that Plaintiff had ignored all advice not to use this arm except for range of motion in order to improve his function. Plaintiff "used the arm extensively until the plates were loosened and became painful and surgery became necessary.  *Id.*; *see* R. 17, 372 (Dr. Thornberry noting that Plaintiff had hurt his back while mowing the yard and normal x-rays.  He indicated that it was "basically a lumbosacral strain.")  By August 21, 2001, Plaintiff was no longer prescribed narcotics for pain and was to take Ibuprofen, Tylenol or

were not favorable to Plaintiff.   *Id.*)   The ALJ found that Plaintiff's "right arm injury does not cause more than a minimal limitation on [Plaintiff's] ability to perform basic work activity, and therefore is nonsevere."   *Id.*

The ALJ considered Plaintiff's complaint of chronic obstructive pulmonary disease (COPD) in light of Plaintiff's testimony; Plaintiff's reports to Dr. Wasserman of shortness of breath; and the reports of Drs. Holloman and Sampson.   R. 14-15.

The ALJ noted that Plaintiff testified that he was

unable to work because he experiences shortness of breath with any exertion. The claimant testified that currently he takes Advair and Spiriva for his breathing problems.   He explained that these help his breathing problems "somewhat." The claimant further testified that he smokes a pack and one half of cigarettes each day.   The claimant stated that he has not used marijuana in over fifteen years.   [R. 38-39, 50. 52-53].   However, on August 28, 2007[,] the claimant admitted to the use of marijuana to Dr. Holloman. (Exhibit 4-F) [R. 238].

The claimant did not begin consistently reporting shortness of breath to his primary care physician Jeffrey Wasserman, D.O., until November of 2008. (Exhibit 17-F) [R. 427-28].   Prior to that time, the claimant frequently reported no dyspnea and no decrease in breath sounds were heard. (Exhibit 9-F).
Dr. Wasserman treated the claimant for diffuse obstructive chronic bronchitis. The claimant was consistently advised to stop smoking.   (Exhibits 9-F, 17-F).

R. 14-15.

---

both together.   R. 362.   On November 26, 2001, Dr. Thornberry performed another surgical procedure to remove hardware (plate), bone graft, nonunion, and re-internal fixation of the radius.   R. 357.   Plaintiff had an office visit on December 6, 2001, and prescribed a 10-day supply of Vicodin with no refills.   R. 356.   By December 18, 2001, Plaintiff's ulna was completely healed and the radius was the only hold-up.   R. 355.   An April 4, 2002, CT of Plaintiff's right wrist was performed and the impression was healed distal radial and ulnar fracture without no complications such as avascular necrosis identified.   R. 349.   On April 18, 2002, Dr. Thornberry reviewed the CT and x-rays and noted: "He can go out and use his arm in any way he sees fit and earn any type of living that he desires.   We are going to release him today to return to see us on an as needed basis."   R. 348.   The ALJ captured the essence of these patient notes in his decision. R. 14.

As noted by the ALJ, Plaintiff began treating with Dr. Wasserman on January 17, 2008.   R. 17, 297-300.   At that time, Plaintiff complained, in part, of shortness of breath.   R. 297.   Pulmonary symptoms were dyspnea during exertion.   R. 298.   Examination of his lungs revealed a decrease in breath sound was heard; no wheezing was heard; no rhonchi were heard; and no rales/crackles were heard.   R. 299.   On January 24, 2008, none of these symptoms were heard, although dyspnea during exertion is noted under pulmonary symptoms.   R. 296; *see* R. 289, 291, 294-95, 444-45.

Treatment records indicate that Plaintiff frequently had lumbosacral pain elicited by motion.   R. 289-99.   As noted by the ALJ, a MRI of Plaintiff's lumbar spine was performed on March 12, 2008, which showed mild dextroscoliosis, mild spondylosis, and circumferential disc bulging at L3-4 and L4-5.   Normal alignment and normal lordosis were maintained; no fracture, compression, deformity, or narrow replacing lesion found; and the conus terminated normally at L1 and the nerve roots were distributed normally in the sac.   R. 17, 301.   Dr. Wasserman referred Plaintiff for a consultation with a pain specialist.   R. 17, 290.

On April 30, 2008, Plaintiff reported no chest pain or discomfort and no dyspnea.[4]

---

[4]   Th ALJ noted that on April 15, 2008, Plaintiff reported to consultative examiner, Dr. Sampson, "that he was having dyspnea which was progressive for the past year. Spirometric pulmonary function tests were performed and the claimant's results pre-bronchodilation were normal (FVC/$FEV_1$: 4.23/3.28, 4.37/3.46, and 4.22/3.27.) Post-bronchodilation tests were not administered.   (Exhibit 10-F).   Lower extremity physiologic studies were performed and all results were within the normal range. (Exhibit 11-F)."   R. 15, 308-16, 317-21.   During his RFC assessment, the ALJ again referred to Dr. Sampson's examination.   R. 17.   Plaintiff's tandem walk was poor and he had a stooped posture; his gait was broad-based and unstable and use of a cane was necessary.   Plaintiff's back was non-tender with no spasms; his straight-leg raises were negative supine and siting and his ROM in his lumbar spine was within normal limits.   His

R. 440-41.   On June 16, 2008, Plaintiff reported sudden onset of chest pain with shortness of breath, but no lung adverse symptoms, such as decrease in breath sounds was heard.   Examination of Plaintiff's cardiovascular system was normal.   R. 437-38; *see* R. 434-36.   On September 19, 2008, Dr. Wasserman assessed Plaintiff's complaints of, in part, cardiac and respiratory status.   R. 431.   A decrease in breath sounds was heard; no wheezing was heard; no rhonchi were heard; and no rales/crackles were heard. Examination of Plaintiff's cardiovascular system was normal.   *Id.*   Dr. Wasserman's assessment included diffuse obstructive chronic bronchitis, obesity, compression arthralgia of the shoulder region, lumbago, and bulging lumbar disc.[5]   R. 432.   On November 20, 2008, Plaintiff received a pulmonary evaluation.   R. 427-28.   No lungs symptoms were heard.   Plaintiff had pain in his left shoulder on motion and lumbosacral spine pain elicited on motion.   Plaintiff was counselled on proper diet.   Plaintiff was continued on several medications, including Lortab, Diovan, Zanaflex, K-Dur.   R. 428.

Plaintiff continued be treated by Dr. Wasserman in 2009, with examination of his lungs generally revealing similar findings, such as no decrease in breath sounds was heard; no wheezing was heard; no rhonchi were heard; and no rales/crackles were heard and no dyspnea.   *See, e.g.*, R. 396-400, 404, 406-07, 409, 411-15, 417, 421, 423; *but see* R. 402, 418-19.

The ALJ also considered Plaintiff's application for a disabled parking permit dated

---

motor strength was 5/5 throughout, including hand grip.   He was able to stand and walk on his heels and toes.   Dr. Sampson diagnosed Plaintiff with morbid obesity and dyspnea with exertion--history of asthma, COPD.   R. 17, 308-12.

[5]   Although it is not a listed impairment, the ALJ also considered Plaintiff's obesity. R. 16.

March 23, 2009, in which Dr. Wasserman checked a box which stated that Plaintiff "has a restriction by lung disease and has severe limitations in his ability to walk due to an arthritic, neurological, or orthopedic condition. (Exhibit 3-F)." R. 15. The ALJ gave "little weight to this opinion as it is based upon the claimant's subjective complaints and is not supported by the clinical findings and objective testing, including Dr. Wasserman's own treatment notes which often state that the claimant has no dyspnea. (Exhibit 9-F, 17-F)." R. 15. The ALJ concluded this specific subject with the following findings:

> Despite the claimant's testimony that he cannot work because he experiences shortness of breath upon exertion, most recently on October 29, 2009 [,] the claimant reported no dyspnea to his primary care physician. In addition, no decrease in breath sounds was herd, no wheezing was heard, no rhonchi were heard, and no rales/crackles were heard. (Exhibit 17-F).

> The undersigned finds that based on the objective medical evidence including diagnostic testing [COPD] does not impose more than a minimal limitation on the claimant's ability to perform basic work activity and is therefore nonsevere.

R. 15.

On December 9, 2009, Plaintiff received treatment for severe back pain at Capital Regional Medical Center Emergency Department. R. 17, 450-67. X-rays of Plaintiff's lumbar spine showed multilevel mild to moderate spondylosis of the lower lumbar spine from L3/L4 through L5/S1. R. 17, 466. Plaintiff was prescribed Toradol and Flexeril and was discharged. R. 17, 457.

Plaintiff continued to receive treatment for his back pain in the form of pain medication adjustments from Dr. Wasserman. R. 17, 396-445. Physical examination showed that Plaintiff has lumbosacral pain with motion. *Id.*

The ALJ considered Dr. Wasserman's diagnosis of diabetes mellitus, but noted that "treatment notes from his primary care physician, Dr. Wasserman, state it is uncomplicated and uncontrolled. (Exhibit 17-F). In addition, the claimant has not alleged any limitations as a result of diabetes mellitus" and, accordingly, the ALJ found "that diabetes mellitus imposes no more than a minimal limitation on the claimant's ability to perform basic work activity and is therefore nonsevere." R. 15.[6] (On or about May 2009, Dr. Wasserman added an assessment of Type II diabetes mellitus-uncomplicated, uncontrolled. R. 413-14.)

3.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15. (During the hearing Plaintiff's counsel stated that no allegation was raised regarding whether an impairment met a listing. R. 32.) Nevertheless, the ALJ considered whether Plaintiff's obesity affected Plaintiff's overall ability to perform work related functions. R. 16.

4.

After step three, the ALJ considered Plaintiff's residual functional capacity (RFC). R. 16-19. The ALJ's consideration of the evidence at step two and for his RFC determination overlaps.

---

[6]  The ALJ is not required to identify all of the impairments that should be considered severe. *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff's allegations include the inability to work due to a right arm injury, and lung and back problems.   R. 16.   Plaintiff testified he has had problems with his back since 2001 or 2002 and it prevents him from walking and bending.   He also testified he has problems reaching overhead.   At the hearing, Plaintiff used a single cane pole that was prescribed by Dr. Wasserman in March of 2009.   He explained he uses the cane every day.   He also takes Lortab four times day and he prescribed Flexeril to be taken four time a day.   He does not have any side effects from his medications and he experiences some relief from the pain.   He testified that his blood pressure and diabetes seem "to be working fine" with his medications.   R. 16-17, 39-40, 50-54, 56-58.

The ALJ summarized Plaintiff's daily activities:

With the regard to his activities of daily living, the claimant testified that he watches television most of the day and plays with his dog.   He occasionally washes the dishes.   The claimant testified that he can lift a gallon of milk with his left hand. The claimant reported to Dr. Price that he cleans the house, does some yard work, cooks, and washes dishes.   (Exhibit 6-F).   The claimant testified he is able to simple meals such as frying a hamburger or boiling macaroni.

At the hearing, the claimant testified that is not able to stand for a shower, but must take a bath instead.   The claimant testified that he has difficulty with his shoes and wears Velcro shoes.   On his function report in August of 2007, the claimant did not have problems bathing but did have problems with his shoes.   (Exhibit 3-E).   The claimant goes to visit his family on weekends.   They live within 50 miles. Claimant occasionally takes car trips to and from Atlanta and North Carolina.   The claimant does not drive on these trips.   The claimant occasionally plays card games such a [sic] solitaire on the computer.

The claimant testified that his back pain prevents him from walking and bending. On his activities of daily living form, the claimant indicated that he can lift and carry 10-20 pounds.   He also estimated that he can walk 20-25 feet before experiencing shortness of breath or pain. (Exhibit 8-E).

R. 18.

On June 20, 2001, Plaintiff began complaining of severe lower back pain after mowing the lawn.   Dr. Thornberry ordered radiographs, AP and lateral of the lumbar spine, "which are entirely normal."   Dr. Thornberry indicated that it was a lumbosacral strain.   R. 17, 372.   On August 28, 2007, Dr. Holloman noted that Plaintiff's spine and extremities were in good alignment and there were no paravertebral tautness or tenderness and Plaintiff's ROM in his spine was normal.   R. 17, 239-42.   As noted above, Plaintiff began treating with Dr. Wasserman in January of 2008.   R. 17. Dr. Wasserman's treatment notes indicate that Plaintiff had lumbosacral pain elicited by motion.   *See supra* at 8.

With regard to his chest pain, Plaintiff testified that he did not have a heart attack but rather had muscle spasms of the heart.   Plaintiff explained that a catheterization was performed and with his heart medication he has not had any more problems. R. 17.   (The ALJ further discussed Plaintiff's admission to Tallahassee Regional Medical Center in July of 2007 with chest pains.   Tests results were normal.   R. 17-18.)

The ALJ considered several consultant assessments and other evidence when completing his RFC assessment.   R. 18-19.

A residual functional capacity assessment performed by Ronald Kline, M.D., on September 13, 2007[,] found that the claimant is capable of: occasionally lifting fifty pounds; frequently lifting twenty-five pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday.   (Exhibit 5-F). The undersigned gives little weight to Dr. Kline's opinion as it is inconsistent with the greater weight of the evidence which supports the conclusion that the claimant has additional limitations which limit him to light exertion work.

On June 11, 2008, a residual functional capacity performed by David Guttman, M.D., found that the claimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. Dr. Guttman

further found that the claimant is limited to occasional climbing ramps/stairs, stooping, kneeling, couching, and crawling.   The claimant cannot climb ladders/ropes/scaffolds or balance.   In addition, he should avoid concentrated exposure to extreme heat.   Dr. Guttman finally opined that the claimant should avoid even moderate exposure to hazards such as machinery, heights, etc. (Exhibit 12-F).   The undersigned does not give weight to Dr. Guttman's opinion regarding postural and environmental limitations.   However, great weight is given to Dr. Guttman's opinion that the claimant is capable of performing light exertion work as it is consistent with the overall evidence of record, including the claimant's statements that he was able to lift 10-20 pounds.

Rodrigo A. Agbunag, Jr., M.D., evaluated the claimant on July 29, 2008 [,] for a permanent impairment rating following a motor vehicle accident which occurred on November 19, 2004.   The claimant reported that he had relief with his as needed basis pain medications.   Dr. Agbunag opined that the claimant had reached maximum medical improvement and had a total impairment rating of 10 percent. (Exhibit 14-F).   The undersigned has given some weight to
Dr. Agunag's, however, determinations of disability under the Social Security Act are ultimately reserved to the Commissioner.

On an application for a disabled person parking permit dated March 23, 2009, Dr. Wasserman checked the boxes which stated that the claimant has a restriction by lung disease and has severe limitations in his ability to walk due to an arthritic, neurological, or orthopedic condition.   (Exhibit 3-F).   The undersigned has considered Dr. Wasserman's opinion, but gives it little weight because it is not bolstered by the overall medical evidence of record including his own treatment records.

The undersigned gives great weight to Dr. Guttman's opinion that the claimant is capable of performing light exertion work, and accordingly adopts a residual functional capacity for light exertion work.   In reaching this conclusion, the undersigned finds the claimant credible to the extent that he would experience some back pain. The residual functional capacity was reduced to accommodate these limitations, including the requirements that the claimant cannot climb ladders/ropes/scaffolds and should avoid hazards such as exposure to electrical shock, working in high exposed places, enclosure to radiant energy, working with explosives, and exposure to toxic or caustic chemicals.   The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the range of work described above.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Based on the overall medical evidence of record, the undersigned cannot find that the claimant's allegation that he is incapable of all work activity is fully credible.

R. 18-19.

5.

At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work as a construction worker, mechanic, frame carpenter, and tire changer. These jobs were performed at the medium to heavy exertion levels. Accordingly, the claimant is unable to perform past relevant work." R. 19.

6.

At step five, the ALJ determined that considering Plaintiff's age (44 as of January 22, 2010, the date of the ALJ's decision; 41 as of March 31, 2007, the last date insured for DIB; 35 as of May 19, 2001, the alleged onset date); education (8th grade and limited); work experience; and RFC; that "there are jobs in that exist in significant numbers in the national economy that the claimant can perform," such as parking booth attendant.[7] R. 20. First, the ALJ determined that under the Medical-Vocational Rules (the Grids) and specifically Rules 202.11 and 202.18 a finding of not disabled is directed based on

_____

[7] Younger individuals are between the ages of 18 and 49. *See* 20 C.F.R. § 404.1563(c). A person closely approaching advanced age is between 50 and 54. 20 C.F.R. § 404.1563(d). After finding that Plaintiff was 35 years old on the alleged disability date, he then stated that Plaintiff "subsequently changed age category to closely approaching advanced age." R. 20. It appears the ALJ is mistaken. As noted herein, Plaintiff was 44 years old as of the date of the ALJ's decision. *See* 20 C.F.R. § 404.1563(b) ("We will use each of the age categories that applies to you during the period for which we must determine if you are disabled."). Here, for SSI, that end date is the ALJ's decision, and for DIB, the end date is March 31, 2007, the date last insured. R. 21.

Plaintiff's RFC for the full range of light work, considering Plaintiff's age, education, and

work experience.   R. 20.

Notwithstanding, the ALJ inquired of Mr. Mayne, the vocational expert, at hearing.

R. 58-61.   Mr. Mayne testified that Plaintiff could not perform his past relevant work.   R.

59-60.   The ALJ then asked Mr. Mayne to

> assume that a hypothetical individual with the same past relevant work
> experience as you've described and the same age and education of the claimant
> which are a younger individual and limited education; and assume further that said
> hypothetical individual is only capable of working with the functional limitations I
> just described [RFC to perform the full range of light work except never climb
> ladders, ropes, or scaffolds and avoid hazards including exposure to electrical
> shock, working at heights, exposed places and radiant energy, working with
> explosives , and exposure to toxic and caustic chemicals]--the light exertion level
> with the other limitations, are there other jobs that the hypothetical individual could
> perform in the regional economy?

R. 60.   Mr. Mayne responded: "[p]ossibly parking booth attendant."   *Id.*

Mr. Mayne referred to <u>Dictionary of Occupational Titles</u> (DOT) number 915.473-010 and

further stated that there are 135,000 nationally and 11,800 in Florida.   R. 60-61.   The job

is described as light and semi-skilled.   R. 61.   Mr. Mayne testified that his testimony was

consistent with the DOT.   *Id.*; *see* R. 20-21.

**B. Substantial evidence supports the ALJ's decision to deny Social
Security benefits under DIB and SSI**.

1.

Plaintiff argues that the ALJ did not adequately develop the record.   Doc. 20 at

2-4.   Closely allied with this argument is Plaintiff's argument that his attorney did not call

appropriate witnesses and provide relevant evidence that would have supported his

various claims of disability.   Plaintiff is most dissatisfied with his attorney's performance

such that he feels he left the hearing "as if [he] had no hearing and that [his] Attorney actually worked for the Social Security Administration instead of [him]."[8]   Doc. 20 at 4.

Plaintiff argues that the ALJ should have included medical records from a local hospital pertaining to his injury sustained on May 19, 2001, and the police report and pictures from the accident.   Doc. 20 at 2.   Plaintiff claims his "witness could have and will if given the chance testify that the metal on the inside of [the soda machine] had dents in it from the impact of [his] body of which can be seen in the pictures taken by the Sheriff's Office."   *Id.*   He claims that his left arm was injured when he was "thrown into a soda machine."   *Id.*   The evidence of record indicates that Plaintiff injured his right forearm after an explosion of a tire he was changing.   R. 14.   The ALJ acknowledged Plaintiff's May 2001 arm injury and summarized the treatment records for that period.   R. 14.   Plaintiff has not shown how the police report or emergency room records from the day of the injury would add anything material to this record, especially in light of Dr. Thornberry's detailed patient notes from the date of the injury and thereafter during the healing process.

Plaintiff argues that his fiancé should have been able to testify.   Doc. 20 at 3; *see* R. 34, 38.   Plaintiff claims his attorney told him "that she could not come into the Hearing

---

    8   "The Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings."   Cornett v. Astrue, 261 F. App'x 644, 651 (5th Cir.2008) (unpublished) (rejecting ineffective assistance of counsel claim where plaintiff was denied SSI and citing Brandyburg v. Sullivan, 959 F.2d 555, 562 (5th Cir.1992)).   At least one court specifically has held that a Social Security claimant who is represented by counsel of the claimant's own choosing may not later claim that counsel was ineffective.   *See* Hettinger v. Richardson, 365 F.Supp. 1245, 1246 (E.D. Pa.1973); *see also* Cole v. Comm'r of Soc. Sec., Civil Action No. 2:09CV225-SAA, 2010 U.S. Dist. LEXIS 98453, at *15 (N.D. Miss. Sept. 20, 2010).   Although of little comfort for Plaintiff, at the end of the hearing, the ALJ told Plaintiff's attorney: "I think you did a nice job."   R. 61.

with [him]." It appears that this person filled out a Function Report on August 17, 2007, and provided details regarding Plaintiff's daily activities. R. 145-52 (Exhibit 3E). The ALJ briefly referred to this exhibit. R. 18. Although Plaintiff is dissatisfied with his attorney for not calling her to testify, Plaintiff does not state the nature of any material testimony that she could have offered that would have been new and different from that which is already in the record and considered by the ALJ.

Plaintiff also argues that if he had been allowed to call witnesses, he would have called his mother who would have testified that he had breathing problems as a baby. Doc. 20 at 4. Plaintiff's breathing issues are addressed in the record as described herein and addressed by the ALJ.

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. §§ 404.1512(a); 416.912(a); Moore v. Barnhart, 405 F.3d at 1211. On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. §§ 404.1512(d), 416.912(d). The question here is whether there are "the kinds of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). In this case, the ALJ considered the relevant and material evidence in the record. Notwithstanding Plaintiff's argument to the contrary, this record does not contain the kind of gaps necessary to demonstrate prejudice to Plaintiff. Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and no further development of the record is required.

2.

Plaintiff argues that the ALJ should have accorded more weight to the opinion of his treating physician, Dr. Wasserman.   Doc. 20 at 4.   On March 23, 2009, Dr. Wasserman completed a check-box application for a disabled parking permit on behalf of Plaintiff.   R. 469.   Dr. Wasserman checked boxes indicating that Plaintiff was unable to walk 200 feet due to a lung disease and severe limitation in his ability to walk due to an arthritic, neurological condition.   *Id.*   The ALJ summarized Dr. Wasserman's conclusions, but gave his opinion "little weight because it is not bolstered by the overall medical evidence of record including his own treatment records." R. 19.   For example, Dr. Wasserman generally noted that Plaintiff had no wheezing or decrease in breath sounds after many physical examinations.   *See, e.g.*, R. 289, 291, 294-96.   Also, Dr. Wasserman, although noting several diagnoses over time, did not opine that Plaintiff's impairments, including any orthopedic, arthritic, or neurological condition, were of such magnitude that he would be unable to perform light work. Without support from the medical records, such forms are generally not entitled to significant weight.   *See* Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320-RS-EMT, 2010 U.S. Dist. LEXIS 125831, 2010 WL 4942141, at *14-15 (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating

physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms).

Additionally, evidence from other physicians is inconsistent with Dr. Wasserman's opinion as stated on the check-off form.   For example, the ALJ considered the consultative examination reports from Dr. Holloman in August 2007 and Dr. Sampson in April 2008.   R. 14-15, 17.   He also considered Dr. Guttman's June 2008, physical RFC assessment, particularly his opinion that Plaintiff "is capable of performing light exertion work."   R. 18-19.   These consultative opinions are inconsistent with Dr. Wasserman's opinion and the ALJ stated specific reasons for discounting his opinion even though he was a treating physician.   *See* Moore v. Barnhart, 403 F.3d at 1212.   Substantial evidence supports the ALJ's consideration of Dr. Wasserman's opinions.   R. 15, 17, 19.

3.

Plaintiff argues that the ALJ erred when he found that Plaintiff could perform other work such as a parking booth attendant and, in part, takes issue with the ALJ relying on the vocational expert's opinion that Plaintiff could "possibly" perform this job.   Doc. 20 at 2.   The ALJ asked the vocational expert a hypothetical question based on Plaintiff's [the hypothetical person] age, education, work experience, and proven limitations.   R. 59-61. Substantial evidence supports the hypothetical question.

The vocational expert stated that such person, here Plaintiff, could possibly perform the job as a parking booth attendant and that there were 135,000 jobs nationally

and 11,800 jobs regionally, i.e., the state of Florida.   R. 60-61.   The fact that the

vocational expert added the word "possibly" does not necessarily eliminate or nullify his

testimony about the existence of jobs that exist with Plaintiff's RFC.   *See generally*

Eubanks-Glades v. Colvin, Case No. 13-60029-CIV-COHN/SELZER, 2013 U.S. Dist.

LEXIS 165838, at *15 (S.D. Fla. Nov. 5, 2013); Seymour v. Colvin, Civil Action

2:12-cv-1005, 2013 U.S. Dist. LEXIS 128161, at *30-31 (S.D. Ohio Sept. 9, 2013).   The

DOT describes the job of "parking-lot attendant" as light work which is consistent with the

ALJ's RFC assessment.[9]

Plaintiff also argues that there are not a significant number of parking booth

attendant jobs within commuting distance.   Doc. 20 at 3.   The regulations state that

"work exists within the national economy when it exists in significant numbers whether in

the region where you live or in several other regions of the country."   20 C.F.R. §§

404.1566(a)(1); 416.966(a)(1).   "It does not matter whether-(1) Work exists in the

immediate area in which you live."   *Id.*   The vocational expert testified there are 11,800

such jobs in the state of Florida.   R. 60-61.   Substantial evidence supports the ALJ's

---

[9]   *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. Rev. 1991) at
915.473-010 ("Parks automobiles for customers in parking lot or storage garage: Places
numbered tag on windshield of automobile to be parked and hands customer similar tag
to be used later in locating parked automobile.   Records time and drives automobile to
parking space, or points out parking space for customer's use.   Patrols area to prevent
thefts from parked automobiles.   Collects parking fee from customer, based on charges
for time automobile is parked.   Takes numbered tag from customer, locates automobile,
and surrenders it to customer, or directs customer to parked automobile.   May service
automobiles with gasoline, oil, and water.   When parking automobiles in storage garage,
may be designated Storage-Garage Attendant (automotive ser.).   May direct customers
to parking spaces.   *GOE: 09.04.02 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 81.*")

determination that there are a sufficient number of parking booth attendant jobs to satisfy the Commissioner's burden at step five.

Further, Plaintiff questions whether the parking booth attendant job required a high school education.   Doc. 20 at 3.   The DOT does not define whether the job requires a high school education, but does state that the job has a specific vocational preparation (SVP) of 2, requiring one month or less of training and a low degree of general learning ability.   (A SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."   DOT, Appendix C: Components of the Definition Trailer, § II, SVP.)   Substantial evidence supports the ALJ's finding that Plaintiff can perform the job as a parking booth attendant, notwithstanding his limited education (8th grade).

Plaintiff argues that he could not perform this job because of his breathing problems.   Doc. 20 at 3.   The ALJ found that Plaintiff's COPD did not impose more than minimal limitations on his ability to perform basic work activities and was a nonsevere impairment.   R. 15.   Plaintiff's pulmonary tests were normal.   R. 15, 313.   Plaintiff frequently reported no dyspnea.   R. 15, 393, 398, 400, 404, 406, 409, 411, 413, 415, 417, 429, 431.   Plaintiff's treating physician generally noted no decrease in breath sounds, no wheezing, no rhonchi, and no rales or crackles.   R. 15, 289, 291, 295, 438, 442, 445.   Substantial evidence supports the ALJ's finding that Plaintiff's breathing problems caused no more than minimal limitations on his ability to perform basic work activities, including work as a parking booth attendant.

Lastly, Plaintiff argues that his case should be remanded because he was later found disabled one day after the date of the ALJ's decision.   Doc. 20 at 2.   Decisions of

the ALJ are reviewed to determine whether the claimant is entitled to benefits during a specific period of time, which period is prior to the date of the ALJ's decision, here January 22, 2010, R. 21.   *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam); Cassidy v. Comm'r of Soc. Sec., 383 F. App'x 840, 842 (11th Cir. 2010) (unpublished); Anderson v. Astrue, No. 5:06cv192/SPM/EMT, 2007 WL 5002066, at *12 (N.D. Fla. Nov. 9, 2007).   The relevant period for this Court's consideration is the time-period *prior* to the ALJ's decision.   Moreover, sentence six of 42 U.S.C. § 405(g) provides that the district court may remand the case to the Commissioner for "additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   *See* Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009); *see also* Bradley v. Bowen, 809 F.2d 1054, 1057-58 (5th Cir. 1987).   Plaintiff has not provided the required good cause.   As a result, a subsequent award is not relevant.   Also, the Appeals Council considered this issue, but "found that this information does not warrant a change in the [ALJ's] decision."   R. 2. Remand for re-consideration of the subsequent award of benefits is not required.

**IV.  Conclusion**

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.    Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits is **AFFIRMED.**    The Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 9, 2013.


s/   **Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**